JOURNAL ENTRY AND OPINION
Appellant City of Cleveland contends that Municipal Court Judge Angela R. Stokes erred when she granted appellee/cross appellant Nicasio Agosto, Jr.'s motion for a new trial after a jury found him guilty of cruelty to animals in violation of Cleveland Ordinance 603.09(a)(1). Agosto claims the judge erred when she denied his Crim.R. 29 motion for acquittal. We agree the City failed to present sufficient evidence to satisfy the essential element of recklessness beyond a reasonable doubt to sustain the conviction and vacate the judgment.
From the record we glean the following: On August 8, 1998, sometime after 2:30 p.m., Cleveland Police Officer Nicholas Vukmire responded to a report of a dog left alone in a white Pontiac Grand Am outside of a Denny's Restaurant on Brookpark Rd. in Cleveland. Vukmire said the outside air temperature that day was in excess of 90 degrees when he and his partner, Officer Angela Marra, who Vukmire was training at the time, arrived at the location. Vukmire entered the restaurant and asked the hostess to find the owner of the Grand Am. Marra approached the car parked in an unshaded portion of the lot. She testified the dog, later identified as Showpa, barked at her, panted excessively, and began running back and forth across the front seat. She stated the car windows were open about 3/4 of an inch and the sunroof about three inches. When Vukmire joined Marra he noted there was no shade and, despite the window openings, there was no cool air to be had by this dog anyway. He had been told by an unidentified person, who claimed to have reported the situation, that the dog had been in the car for an hour, but Vukmire was not certain of the actual length of time that the dog had been left unattended. He attempted to open a car door by passing an object through the open portion of the window but was unsuccessful. The officers then called for an animal control officer.
According to Tiffany, Agosto's thirteen-year-old daughter, her father had no intention of bringing Showpa to the restaurant that day but the dog liked to travel in the car and had jumped in unnoticed. Agosto discovered that she had joined them on their trip to Denny's just shortly before they arrived and did not want to drive home again. Her father left the dog in the car but opened the windows and sunroof about three inches; far enough for ventilation but not enough for a person to reach in and open the doors or steal the dog. She testified she and her family had been seated in the restaurant less than thirty minutes when a waitress asked whether her father owned a white Grand Am. She then left the restaurant with her father, approached the officers and he asked whether there was a problem. Tiffany claimed that Vukmire said he had no business waiting seven minutes for them. She said her father apologized, explaining he had come outside as soon as he learned the police were at his car. Tiffany stated that Vukmire told her father he should lock him up: I should treat you just the same way you treated the dog. When Agosto allegedly offered to get some water for the dog, she said Vukmire told him not to bother because the animal warden was on his way.
According to Vukmire, Agosto refused to produce identification upon inquiry, saying there was no reason for him to see it and became belligerent and irate when asked whether he owned the car. Marra said they both yelled at each other. The transcript reveals there is little agreement about exactly what was said by both Vukmire and Agosto.
Vukmire placed him under arrest for disorderly conduct and tried to put Agosto's arms behind his back, but Agosto stepped away stating he was going back to pay for his meal. Vukmire eventually placed Agosto in the back of the police vehicle.
Other Agosto family members came from the restaurant to the car. Tiffany said she put her arm through the window far enough to play with Showpa, but she was unable to reach the door lock. Angel Sanchez, Agosto's sixteen-year-old nephew, noted that when the dog warden arrived, he was able to reach his arm up to the elbow into the driver's side window. When the dog warden asked whether someone could open the car door, Vukmire got keys from Agosto and Mrs. Agosto used them to unlock the door.
According to Vukmire, the kennel truck arrived ten to twenty minutes after they arrived on the scene; Marra, uncertain of the time, estimated the warden's arrival at 20 to 45 minutes. There was testimony that Agosto sat in the back of the police vehicle for a half hour before the warden arrived and no one asked him for the keys to the Grand Am until that time.
Officer J. R. Frye, an animal control officer and animal warden, described the temperature that day as 91 and muggy based upon information he had obtained from the National Weather Service but, later admitted that he did not know the exact temperature at that time of day. He explained that he had received a call that day around 2:20 p.m. about a dog locked in a car, but he did not respond to the call immediately because his superior officer told him to wait for word from the patrol vehicle. At 3:00 p.m. he received that word and left the City kennel, arriving on the scene at around 3:30 p.m. After the car door was unlocked, Frye claimed he reached in and picked the five to seven-pound dog up off the floorboard, however, Tiffany and Angel testified that Tiffany took the dog from the car and gave it to Frye.
Frye described the dog as clean and well-taken care of but appeared distressed, scared, and shaken probably due to the commotion around the vehicle. The dog also exhibited signs of both exhaustion, consisting of sweating, perspiring, and not barking, as well as signs of dehydration; a pale white appearance of the tongue and gums. He placed the dog in the back of his vehicle and began obtaining information from Tiffany who asked for her return. Frye and the dog reached the air-conditioned City kennel at 4:00 p.m. where he gave her two bowls of water or about a half-quart of liquid. After that point, the dog became active and playful, and Frye gave the dog no further attention.
Agosto was charged with aggravated disorderly conduct, resisting arrest and cruelty to animals for leaving the dog in auto in extreme heat over 1 hr. in violation of Cleveland Ordinances 605.03, 615.08 and 603.09(a)(1), respectively.
The action proceeded to trial on November 2, 1998, and the judge dismissed the aggravated disorderly conduct pursuant to a Crim.R. 29 motion for acquittal. The jury returned a verdict of not guilty upon the charge of resisting arrest but guilty of cruelty to animals. Within moments after reading the verdict into the record, the judge brought to the attention of both attorneys, out of the hearing of the jurors, that the City's Exhibit 1, which she had ruled inadmissible, had been taken into the jury room during deliberations. The exhibit, from which Frye had testified, consisted of a white sheet of paper dated October 22, 1998 with printed information taken from the Internet about an article appearing in the Plain Dealer, August 8, 1998 edition at sec. B, pg. 3. The exhibit also contained his handwritten notations:
 National Weather Service (216) 265-2370[,] on August 8, 1998 High was 91 [,] Low was 71 [;] www.csuohio.edu/nws. Info can be found here. Judge Stokes polled the jury, inquiring whether anyone had read the document. Five of the eight jurors responded that they had read it but did not consider it in deliberations. One juror responded, We all agreed it was a hot day. Whether it was 91 or 88, it was a hot day.
On November 19, 1998, Agosto filed a motion titled Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial, requesting the judge to enter a judgment of acquittal pursuant to Crim.R. 29 due to the lack of substantial evidence submitted at trial. He also requested a new trial based upon three grounds: (1) the verdict was against the manifest weight of the evidence; (2) the verdict was contrary to law; and (3) there was irregularity in the court proceeding by which Agosto was denied a fair trial. The City filed its response and, on January 5, 1999, the judge, without opinion, denied the motion for judgment of acquittal but granted the motion for a new trial. Both the appeal and cross-appeal challenge this order.
The City presents the following assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR A NEW TRIAL WHEN THERE WAS OVERWHELMING EVIDENCE OF DEFENDANT-APPELLEE'S GUILT ABSENT A PIECE OF PAPER REPORTING THE TEMPERATURE OF THE DAY IN QUESTION.
The City argues that, since the evidence of Agosto's guilt was overwhelming, the court should not have granted a new trial simply because the jurors had access to the previously excluded document during their deliberations. Because we find the assignment of error raised by Agosto on his cross-appeal determinative of both appeals, we will not address it. App.R. 12(A)(1)(c).
Agosto's assignment of error on his cross-appeal states:
 THE TRIAL COURT ERRED IN DENYING APPELLEE/CROSS-APPELLANT'S MOTION FOR ACQUITTAL AT THE CLOSE OF THE CITY'S EVIDENCE; DENYING HIS RULE 29 MOTION FOR DIRECTED VERDICT OF ACQUITTAL AT THE CLOSE OF ALL THE EVIDENCE; AND DENYING DEFENDANT-APPELLEE CROSS-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL NOTWITHSTANDING THE VERDICT, POST VERDICT.
Cleveland Ordinance 603.09 provides in pertinent part:
603.09 Cruelty To Animals
(a) No person shall:
 (1) Torture an animal, deprive one of necessary sustenance, unnecessarily or cruelly beat, needlessly mutilate or kill, or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water;
(2) * * *
Agosto contends the City put forth nothing more than conclusory evidence rather than hard facts proving that he violated Cleveland Ordinance 603.09(a)(1). He claims the evidence does not support a finding that the dog was left in the car over an hour, that the temperature reached 91 degrees, or that the dog suffered from heat exhaustion, especially since the animal warden was not qualified as an expert. Moreover, he argues, the City did not satisfy the requisite element of intent.
The City counters that it satisfied the requisite element of intent because it produced overwhelming evidence that Agosto was reckless when he left the dog in a parked car, in the sun, on a hot day without water and violated Cleveland Codified Ordinance 603.09(a)(1).It points out that every witness opined that August 8, 1998 was a hot day. Finally, the City argues, the ordinance does not require it to prove the dog was harmed, only that it was confined in the car without food or water.
When an appellate court reviews an assignment of error regarding the application of Crim.R. 29 and the sufficiency of the evidence to support a criminal conviction its function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. The question whether the evidence is legally sufficient to sustain a verdict is one of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541.
Both Agosto and the City agreed that the requisite culpable mental state that the City must prove as an element of the offense of cruelty to animals is that of recklessness. The judge defined recklessnessin the jury instructions as follows: A person acts recklessly when, with heedless indifference to the consequences, he or she perversely disregards a known risk that his or her conduct is known to cause a certain result to be of a certain nature. See R.C. 2901.22(C).
The evidence showed that: (1) the officers found the dog in a car at a restaurant where Agosto and his family were dining; (2) Agosto opened the car windows at least 3/4 of an inch; (3) the sunroof was opened three inches; (4) the temperature at that time of day was between the high 80s to low 90s; (5) the dog appeared clean and well cared for; (6) the dog exhibited signs of distress, but the animal warden attributed it to the commotion around the vehicle; (7) the dog exhibited signs of both exhaustion and dehydration when removed from the car; (8) the dog received water only after it was taken to the kennel; (9) the dog consumed a half-quart of water; (10) the dog received no other attention or veterinary care; and (11) the City knew of the dog's location as early as 2:20 p.m. but took no action to free her until 3:30 p.m.
Construing this evidence and the inferences reasonably drawn therefrom in the light most favorable to the City, any rational trier of fact could not have found that the City satisfied its burden of proving that Agosto acted recklessly beyond a reasonable doubt; an essential element of the offense of cruelty to animals. This assignment of error on the cross-appeal is well taken.
We reverse the decision denying Agosto's motion for judgment of acquittal, vacate the order granting a new trial, vacate the judgment of conviction and remand.
It is ordered that the appellant recover from the appellee its costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ______________________ ANNE L. KILBANE, JUDGE
TIMOTHY E. McMONAGLE, P.J., CONCUR; JAMES M. PORTER, J., CONCURRING IN JUDGMENT ONLY.